Argued April 30, affirmed June 24, 1964

# PETERSON *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

393 P. 2d 651

*Alfred T. McGill,* Portland, argued the cause for

appellant. On the brief were McGill & Clarke, Portland.

*Herbert B. Galton,* Portland, argued the cause for respondent. On the brief were Goldstein, Galton, Galton & Popick, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

DENECKE, J.

This is an action against an insurer to recover $5,000 under the provisions of the uninsured motorist clause of plaintiff's automobile liability insurance policy. The trial court rendered judgment for the plaintiff for the full amount.

The undisputed facts are that plaintiff was injured when he was struck by an automobile driven by an uninsured motorist. The plaintiff was legally entitled to recover damages against the motorist. At the time of the accident plaintiff was performing his duties as a street cleaner for the city of Portland; he was, therefore, entitled to workmen's compensation, which he has received in an amount exceeding the $5,000 policy limits of his uninsured motorist insurance.

The uninsured motorist clause involved here was issued under the compulsory provisions of the Oregon Uninsured Motorist Statute, ORS 736.317:

"(1) No policy insuring against loss resulting from liability imposed by law for bodily injury * * * shall be issued or delivered in this state with respect to a motor vehicle * * * unless

the policy includes the coverage described in subsection (2) of this section.

"(2) The policy referred to in subsection (1) of this section shall provide coverage therein or supplemental thereto, under provisions approved by the State Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, trailers or semitrailers because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall be not less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of ORS chapter 486.

"(3) Subsection (1) of this section does not apply to any policy covering motor trucks as defined in ORS 481.035 where the insured has employes who operate the motor trucks and such employes are covered by workmen's compensation."

The uninsured motorist clause in plaintiff's policy contains a limitation on liability providing:

"4. Limits of Liability    *    *    *
"*    *    *    *    *

"(c) Any loss payable under the terms of this endorsement to or for any person shall be reduced by the amount paid and the present value of all amounts payable to him under any workmen's compensation law, exclusive of non-occupational disability benefits."

The sole question is whether this limitation on the defendant's liability is valid and enforceable. Plaintiff contends it is not valid because it diminishes the protection that the statute requires the insurer to provide.

State Farm contends that the limitation of liability is not in derogation of the statutory requirements because the statute provides that the insurance "shall

provide coverage \* \* \* under provisions approved by the State Insurance Commissioner, \* \* \*." ORS 736.317(2). It is agreed that the provision involved was approved by the Insurance Commissioner. Therefore, if the Commissioner had the statutory authority to approve such a provision, the provision would be a valid and enforceable part of the present insurance contract. Initially, this is a question of the authority granted by the legislature to the Insurance Commissioner.

A study of the general insurance law granting the Commissioner his authority and setting forth his duties shows that he is not equipped or expected to pass upon the wisdom of various provisions of the insurance contract. For example, ORS 736.090 requires every insurer, except marine insurers, to file its policy forms with the Commissioner. However, the Commissioner is not granted any authority to approve or disapprove such policy forms. His power is expressly defined by statute:

> "(1) The commissioner has the power to enforce all the laws of the state relating to insurance \* \* \*. He shall issue such division rulings, instructions and orders as he may deem necessary to secure the enforcement of the provisions of the General Insurance Law, \* \* \*." ORS 736.510.

In the case of life insurance policies and health and accident policies, the legislature has specified numerous provisions that are either required or prohibited in the policies. ORS 739.315-320; ORS 741.120-140. The Commissioner's duty is to examine the policy forms filed and to determine whether the forms contain all the provisions required by law and none of those prohibited by law. The Commissioner has no statutory authority to include or exclude any other

provisions of the policies, not required or prohibited by the statutes.

A hearing by the Commissioner to determine the advisability of approving or disapproving a proposed policy provision is not provided for in either the general insurance law or in the uninsured motorist act. The Administrative Procedures Act does not require a hearing because the approval or disapproval of a proposed policy provision is not a "contested case" within the meaning of the Act. ORS 183.310(2).

The Commissioner is authorized by statute to issue rulings to enforce the insurance law, and he made an official ruling in this case. Insurance Department Ruling No. 39 states that in order to comply with the uninsured motorist law the coverage must be at least as broad as that contained in the endorsement filed by the National Bureau of Casualty Underwriters. The general authority of the Commissioner to make rulings to enforce the insurance laws does not indicate any intent of the legislature to grant the Commissioner the power to determine whether or not an insurer's liability should be reduced by the amount of compensation benefits received by the insured.

We must look, then, to the uninsured motorist act itself to discover the purpose of the law and thus to determine the limits of the Commissioner's authority in this particular case.

Frequently the legislature requires that persons carry a specific type of insurance, requires that insurance covering certain risks shall contain certain provisions, or prohibits the inclusion of certain provisions in certain kinds of insurance; life and health and accident insurance are examples of the latter two classes of legislative action. Insurance policy provi-

sions imposing a lesser obligation on the insurer than that required by statute are unenforceable. For example, see ORS 741.140, 744.130, 747.190. In *Merchants Mutual Casualty Company v. Egan,* 91 NH 368, 20 A2d 480, 135 ALR 745 (1941), the court considered the New Hampshire legislation which sets forth certain provisions that are required to be in automobile liability insurance policies. The legislation also provides that the Insurance Commissioner shall approve the form of the policy. The Insurance Commissioner approved a policy provision that if the named insured shall die or become bankrupt the policy is canceled unless the insurer be given written notice of the change within 10 days after the death or bankruptcy. The court held this provision invalid because it reduced the extent or duration of the insuring obligation which the statute specifically imposed.

In this case the insurance is required by statute. The statute requires the insurer to assume the obligation to provide coverage for an insured who is legally entitled to recover damages from an uninsured motorist because of injuries or death. The statute requires that the extent of this protection, i.e., limits, be not less than in policies listed as proof of financial responsibility. The Financial Responsibility Act requires limits of $5,000 for injury or death to one person, and $10,000 for injury or death to two or more persons. ORS ch 486. The legislature did not further describe the coverage of the statute. However, we note that the Financial Responsibility Act, referred to specifically in the uninsured motorist provision, contains no provision regarding the effect of the receipt of workmen's compensation benefits by the injured party.

■ The basic purpose of the uninsured motorist provision seems clear. It provides protection for the

automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists. See Note, 2 Will L J 56, 61 (1962); *Commissioners of the State Insurance Fund v. Miller,* 4 App Div2d 481, 166 NYS 2d 777, 779 (1st Dept 1957). In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability insurance.

If the motorist who injured the plaintiff in this case had been insured, the amount of plaintiff's recovery from that insurer would not have been reduced by the amount of any workmen's compensation benefits received by the plaintiff. ORS 656.324. However, the injured workman, under the terms of the Workmen's Compensation Act, is not allowed to retain the entire amount received from an insured motorist's insurance carrier in addition to his workmen's compensation benefits. The statute now provides that if an injured workman recovers damages from a third party, the proceeds shall be distributed as follows: (a) costs and attorney fees; (b) 40 per cent of the balance to the injured workman; and (c) the remainder of the amount recovered to the Industrial Accident Commission. ORS 656.322(1). The workman's 40 per cent is in addition to the amount of the compensation benefits. If damages are recovered through a settlement, the Commission is authorized to accept such a share of the settlement as it deems "just and proper." ORS 656.322(3).

It is readily apparent that the uninsured motorist coverage provided by the defendant, with the disputed provision concerning compensation benefits, does not provide the same relief for the injured party as would

have been provided if the negligent motorist had had insurance. Nor is there any limitation on recovery provided in the uninsured motorist statute as is provided in the Workmen's Compensation Act. ORS 656.322, supra.

Furthermore, a perusal of title 56 of the Oregon Revised Statutes, the title covering insurance and insurance companies, reveals that the practice of the legislature, when it desires that an insurance policy shall or shall not contain certain provisions, is to specify the particular provisions in detail and not to delegate this authority to the Insurance Commissioner. In addition to the field of life and health and accident policies, this practice holds true for the policies issued under the Financial Responsibility Act. ORS 486.506-561. That Act goes even further in specifying what other provisions an insurer *may* insert in the policy.

California has followed this practice in its compulsory uninsured motorist law. The California statute provides in great detail exactly what provisions the uninsured motorist provision shall contain. Included in the statute is a provision which specifically allows a reduction of insurance liability by the amount of any workmen's compensation benefits. Cal Ins Code, § 11580.2(g).

The holding in *Horne v. Superior Life Insurance Company,* 203 Va 282, 123 SE2d 401 (1962), is applicable to the circumstances of the present case. There the injured workman initiated proceedings to obtain workmen's compensation benefits; the defense was that the workman had already recovered the full amount of his damages from the carrier of his uninsured motorist insurance. The court held that the defense was untenable:

"In the absence of a statutory provision giving

the employer or its compensation carrier a right of subrogation against an insurer of the employee under the uninsured motorist provisions of a liability policy, such a right does not exist. * * *" (123 SE2d at 404)

There is no general public policy in Oregon that would prevent a recovery in this case. The common law is clear that an injured party cannot recover his total damages from each of two or more tortfeasors. *Murray v. Helfrich,* 146 Or 602, 604, 30 P2d 1053 (1934). But the common law regarding recovery of benefits from more than one source, other than the tortfeasor, is not so clear. In *Cary v. Burris,* 169 Or 24, 127 P2d 126 (1942), we held that the injured plaintiff, a federal employee whose medical expenses had been paid by the United States Employees' Compensation Commission, could recover these same expenses from the defendant tortfeasor. This holding is in accord with the law in most other jurisdictions. See Maxwell, *The Collateral Source Rule in the American Law of Damages,* 46 Minn L Rev 669 (1962).

On the other hand, we had held earlier in *Mc-Donough v. National Hosp. Ass'n,* 134 Or 451, 294 P 351 (1930), that a workman who received compensation benefits from the State Industrial Accident Commission could not recover damages for the same injury against a physician for alleged malpractice. *Accord, Williams v. Dale,* 139 Or 105, 8 P2d 578, 82 ALR 922 (1932). These decisions were based on the provisions of the Oregon Code of 1930 which were subsequently changed by the legislature in the present Workmen's Compensation Act. After the changes in the Act, we held in *Wimer v. Miller,* 235 Or 25, 383 P2d 1005 (1963), that the revised Workmen's Com-

pensation Act no longer prevented the plaintiff's common-law right of recovery against the physician whose negligence injured him, even after acceptance of compensation benefits. In other words, in the absence of a statutory provision to the contrary, the policy in Oregon under the common law is to allow such recoveries.

In all of the decisions mentioned, the defendant seeking to take advantage of the plaintiff's receipt of benefits from some other source has been a tortfeasor; but here, the defendant is a contracting party, not a tortfeasor. This difference, however, is not material in the sense that the basic legislative purpose in requiring uninsured motorist insurance is to place the injured party in the same position he would have been in if the tortfeasor had had liability insurance.

■ The decisions of this court and of other courts and the action of the legislature emphasize one significant fact: the decision to prohibit the receipt of compensation for injuries from more than one source is a policy decision, just as the decision to allow an injured workman only 40 per cent of any recovery from a third party is one of legislative policy. ORS 656.322. By approving the insurance policy provisions here in question, the Insurance Commissioner has made such a decision. The Commissioner's decision goes beyond the mere approval of the language of forms drafted to accomplish the basic legislative purpose of the uninsured motorist statute. In so doing, the Commissioner has acted beyond the scope of his authority, and the provision of the insurance policy in question is void.

We do not pass upon the constitutionality of the act since we hold, as a matter of statutory interpretation,

that the act does not grant the Commissioner the authority to approve policy provisions reducing the insurer's liability by the amount paid the insured as workmen's compensation benefits.

Judgment affirmed.