Phyllis J. Ullman, Individually and as Executor of the Will of Maurice J. Ullman, Deceased, Plaintiff-Appellee, v. Wolverine Insurance Company, Defendant-Appellant.

Gen. No. 68–34.

Third District.

February 6, 1969.

Rehearing denied March 5, 1969.

■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■

Reidy, Katz, McAndrews, Durkee and Telleen, of Rock Island, for appellant.

Eagle and Eagle, of Rock Island, for appellee.

STOUDER, J.

Plaintiff-appellee, Phyllis Ullman, executor of the estate of Maurice Ullman, commenced this action for declaratory judgment in the Circuit Court of Rock Island County seeking a determination that a provision in an insurance policy issued by defendant-appellant, Wolverine Insurance Company, was void. The trial court by its judgment declared such provision void and the insurance company has appealed.

The facts are brief and undisputed. On January 23, 1967, Maurice Ullman sustained injuries and later died therefrom as a result of an automobile collision between his automobile and one operated and owned by an uninsured motorist. The deceased was at the time of the collision, an employee acting within the scope of his employment, and benefits under the Workmen's Compensation Act in the amount of $14,000 were either paid or payable.

At the time of the collision there was in effect an automobile liability policy issued by the defendant, Wolverine in favor of the deceased. Such policy included uninsured motorist coverage with liability limited to $10,000 per person. With respect to the uninsured motorist coverage provision, the policy provided that its liability with respect thereto should be reduced by any amounts paid

or payable under a Workmen's Compensation Act. It is the latter provision which is the source of this litigation.

Plaintiff, in her complaint for declaratory judgment, alleged that the provision permitting the deduction of workmen's compensation benefits was void because if given effect it would reduce the amount of coverage under the uninsured motorist coverage provisions to less than required by statute and hence was violative of the statute. The trial court agreed with plaintiff and declared the provision invalid from which judgment the defendant insurance company has appealed.

The sole question before us is whether the provision permitting the deduction of workmen's compensation benefits is void because it violated Ill Rev Stats 1965, c 73, § 755a. An examination of the statute reveals no specific language either prohibiting or authorizing the deduction in question. It also appears that the question presented is one of first impression, our attention not having been called to any Illinois authorities dealing with the precise issue here involved.

We believe the meaning of the Statute must be determined from its purpose and intent. Consequently, the provision in question may not be deemed valid merely because it is not prohibited and conversely it may not be deemed invalid merely because it is not authorized.

At this time there can be little doubt concerning the reason and necessity for legislative interest and concern in the financial aspects of motor vehicle ownership and operation. Ill Rev Stats 1965, c 95½, § 7–200, et seq., commonly known as the Financial Responsibility Act, represents an effort by the legislature to encourage and promote the availability of financial resources to compensate persons injured as the result of the ownership or operation of motor vehicles. It adopted the requirement of liability insurance as one of the principal means of achieving

such goal. The Financial Responsibility Act does not purport to include all of those circumstances wherein injury may result from the ownership or operation of a motor vehicle. To provide protection to some extent against uncovered hazards the insurance industry evolved the uninsured motorist protection. The legislature has encouraged and promoted the use of uninsured motorist coverage to the point where it is now mandatory in motor vehicle liability policies. Such legislation recognizes uninsured motorist coverage as a practical means for extending the availability of financial resources to compensate for injuries resulting from the ownership or operation of a motor vehicle. Uninsured motorist coverage is by its nature complementary to the requirements of the Financial Responsibility Act. It is not applicable directly to the owner or operator causing the injuries as is the Financial Responsibility Act. Indeed the minimum limits of uninsured motorist coverage required by Ill Rev Stats 1965, c 73, § 755a, are described by reference to Ill Rev Stats 1965, c 95½, § 7–203.

We believe it follows from the foregoing observations, that the purpose of Ill Rev Stats 1965, c 73, § 755a, is to require that a minimum amount of insurance be available to an injured insured which would place such injured insured in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the Financial Responsibility Act. (See Tindall v. Farmers Automobile Management Corp., 83 IllApp2d 165, 226 NE2d 397 and other cases cited therein.) Indeed, the same principle is announced in Peterson v. Farm Mut. Automobile Ins. Co., 238 Ore 106, 393 P2d 651 (1964), and Standard Acc. Ins. Co. v. Gavin (Fla), 184 So2d 229 (1966), principally relied upon by plaintiff and which we shall discuss later.

In order to determine whether giving effect to the workmen's compensation deduction provision affords the

411

insured less protection than he would have enjoyed if the third-party tort-feasor had the minimum required liability insurance, it is necessary to consider certain aspects of workmen's compensation payments. Ill Rev Stats (1965), c 48, § 138.5(b), (Workmen's Compensation Act) provides in substance that an employee receiving benefits under the Act is required to reimburse the employer (or compensation carrier) from any recovery from a third-party tort-feasor, a lien being provided in favor of the employer to aid in the securing of such reimbursement. An injured employee is therefore entitled to retain that portion of a recovery from a third-party tort-feasor (or his liability carrier) which exceeds the benefits received under the Workmen's Compensation Act. Thus in the instant case, if the third-party tort-feasor had been covered by minimum required liability insurance ($10,000) the employer would be entitled to reimbursement in the amount of $10,000 and the employee's recovery would remain the amount of his workmen's compensation benefits, $14,000.

On the other hand, both parties concede there is no reimbursement obligation with respect to amounts received or paid under uninsured motorist coverage. In the instant case if the deduction of workmen's compensation benefits is invalid and therefore not applicable, the plaintiff's net recovery would be $24,000, i. e., $14,000 workmen's compensation benefits plus $10,000 uninsured motorist coverage benefits. If the deduction for workmen's compensation benefits is valid and applicable then nothing would be payable under the uninsured motorist coverage since the benefits received exceed the limits of the policy and the plaintiff would remain with a net recovery of $14,000, the amount of the workmen's compensation benefits.

Thus it can be seen that if the deduction of workmen's compensation benefits is given effect, the injured party's net recovery is the same as he would have received had

the third-party tort-feasor carried the minimum amount of required liability insurance. To the extent that workmen's compensation benefits have been received, the obligation of reimbursement exists regardless of the amount recovered or the total damages sustained by the injured employee.

This brings us to the two cases relied upon by the plaintiff cited above which held workmen's compensation benefit deductions invalid because violative of compulsory minimum uninsured motorist protection limits. The pivotal issue in the Oregon case, supra, was the Oregon statute regarding reimbursement to the employer of workmen's compensation benefits. In Oregon an injured employee is required to reimburse his employer only sixty percent of any recovery from a third-party tort-feasor. Thus, if as provided in uninsured motorist provisions, workmen's compensation benefits were deducted in full, the insured would receive substantially less than he would have received had the third-party tort-feasor been insured. The Court therefore concluded that because of such difference in position the deduction provision did violate the minimum limit requirement.

Although Standard Acc. Ins. Co. v. Gavin, supra, does not discuss Florida's workmen's compensation reimbursement statute, Florida like Oregon, does not require one hundred percent reimbursement of workmen's compensation benefits. Florida permits the division of any recovery from a third-party tort-feasor in accord with equitable considerations by the court. (See London & Lancashire Ins. Co. v. Fairfield (Fla App, 2nd Dist), 132 So2d 459.) Again in Florida it may be said that giving effect to the workmen's compensation benefit deduction would place the insured in a substantially less advantageous position than he would have occupied had the third party been insured.

■■ Since Illinois requires one hundred percent reimbursement of workmen's compensation benefits received,

it follows that conclusions based on different reimbursement provisions are not controlling. They do, however, illustrate the principle to be applied and are harmonious with our conclusion that the deduction of workmen's compensation benefits provision is valid because its effect places the insured in an equivalent position to that which he would have occupied had the tort-feasor been insured with minimum coverage.

For the foregoing reasons the judgment of the Circuit Court of Rock Island County is reversed.

Judgment reversed.

ALLOY, P. J. and CULBERTSON, J., concur.