(No. 42107.—)

PHYLLIS J. ULLMAN, Appellant, *vs.* WOLVERINE INSUR-
ANCE COMPANY, Appellee.

*Opinion filed Oct. 7, 1970.—Rehearing denied Dec. 3, 1970.*

CULBERTSON, J., took no part.
WARD and SCHAEFER, JJ., dissenting.

EAGLE & EAGLE, of Rock Island, for appellant.

KATZ, McANDREWS, DURKEE & TELLEEN, of Rock Island, (STUART R. LEFSTEIN, of counsel,) for appellee.

PER CURIAM: On May 23, 1967, the plaintiff and appellant, Phyllis J. Ullman, the executrix of the estate of Maurice Ullman, brought an action for declaratory judgment in the circuit court of Rock Island against Wolverine Insurance Company, the appellee (Wolverine, hereafter). It sought to determine whether Wolverine could properly deduct workmen's compensation payments made to an insured by his employer in determining Wolverine's liability to the insured under an insurance policy providing for uninsured motorists coverage. This coverage is required by Illinois law to be provided in all automobile insurance policies issued in this State. (Ill. Rev. Stat. 1969, ch. 73, par. 755a.) The circuit court, after hearing evidence, supported the plaintiff's view and held that the provision in Wolverine's policy which permitted the deduction of workmen's compensation payments from Wolverine's uninsured motorist liability reduced the minimum coverage below $10,000, which is required by statute (see Ill. Rev. Stat. 1969, ch. 73, par. 755a and Ill. Rev. Stat. 1965, ch. 95½, par. 7—203, now Ill. Rev. Stat. 1969, ch. 95½, par. 7A—203), and was consequently void. The Appellate Court for the Third District reversed the judgment of the circuit court (105 Ill. App. 2d 408) and we granted the plaintiff leave to appeal to this court.

The facts which form the basis of this controversy are not in question. Maurice Ullman, the plaintiff's husband, was fatally injured on January 23, 1967, in a collision between the automobile he was driving and one owned and

operated by an uninsured motorist. At the time of the collision, Ullman was employed by the Swan Engineering Company and was acting within the scope of his employment. The employer became liable under the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.1 *et seq.*) and paid benefits totaling $14,000.

The decedent maintained an automobile liability policy issued by Wolverine, which provided for uninsured motorist's coverage of $10,000 per person. The policy specified that any liability under this coverage would be reduced by any amounts paid or payable under a workmen's compensation law. Wolverine rejected the plaintiff's claim under the uninsured motorist's clause, contending that as the workmen's compensation benefits here exceeded the policy limits of $10,000, there was no liability on its part.

It is the position of Ullman's executor, the plaintiff, that the statute requiring insurance companies to issue uninsured motorists coverage was intended to provide the same protection for an individual injured or killed by an uninsured motorist as the Financial Responsibility Law (Ill. Rev. Stat. 1965, ch. 95½, par. 7—203) would provide for one injured or killed by a driver insured in compliance with that law. Therefore, any reduction in an insurer's liability below the minimum required by the Financial Responsibility Law, *i.e.,* $10,000, would violate public policy as expressed in the statute requiring uninsured coverage. The plaintiff concludes that to allow Wolverine to set off any benefits to an insured under the Workmen's Compensation Act against the minimum liability coverage Wolverine was required by law to provide as uninsured motorist coverage violates public policy.

Wolverine, in defense, says that the provision in its policy permitting the deduction of workmen's compensation benefits does not reduce the amount of protection, financially considered, that would have been provided had the decedent been killed by an insured motorist who had met the

minimum requirements of the Financial Responsibility Law by having $10,000 liability coverage. This results because any recovery the plaintiff would have received because of the negligence of an insured motorist would have been subject to the subrogation claims of the employer of the decedent for workmen's compensation benefits paid. Therefore, here, Wolverine points out, a full recovery of $10,000 from a motorist would have been more than offset by the subrogation claims of the employer in the amount of $14,000. That is, if the negligent motorist who caused the plaintiff's husband's death had had the minimum insurance liability coverage required by the Financial Responsibility Law, that $10,000 would have been subject to the employer's claim for workmen's compensation benefits paid. Thus, if the tortfeasor had had the minimal insurance coverage, the proceeds from it could not have been added to what had been recovered as a workmen's compensation benefit.

It would appear that the purpose of the provision in our Insurance Code requiring that every automobile liability policy shall contain uninsured motorist vehicle coverage in an amount not less than the limits described in the Financial Responsibility Law (Ill. Rev. Stat. 1969, ch. 95½, par. 7A—101 et seq.) was intended to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed is concerned, if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act. See *Peterson v. State Farm Mutual Automobile Ins. Co.* 238 Ore. 106, (1964), 393 P.2d 651, 653; *Durant v. Motor Vehicle Accident Indem. Corp.*, 15 N.Y.2d 408, 207 N.E.2d 600, 601, dissenting opinion; Long, The Law of Liability Insurance, sec. 24.03.

As the appellate court observed, there is no language in the uninsured motorist's statute (see Ill. Rev. Stat. 1969, ch. 73, par. 755a) either prohibiting or authorizing the insurer to deduct workmen's compensation benefits paid or

payable to the insured. Prior to this, there have not been any cases in which a court of review has considered whether a policy's provision allowing the deduction of these benefits offends public policy. The language of the statute is:

"(1) On or after the effective date of this amendatory Act of 1963, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of the 'Illinois Motor Vehicle Law', approved July 11, 1957, as heretofore and hereafter amended [Financial Responsibility Law], for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, except that the named insured shall have the right to reject such coverage only on policies delivered, renewed or issued for delivery prior to July 1, 1967." Ill. Rev. Stat. 1969, ch. 73, par. 755a.

The pertinent provisions of the Financial Responsibility Law provide: "* * * every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $10,000.00 because of bodily injury to or death of any one person in any one accident and, subject to said limit for one person, to a limit of not less than $20,000.00 because of bodily injury to or death of two or more persons in any one accident, * * *." Ill. Rev. Stat. 1965, ch. 95½, par. 7—203, now Ill. Rev. Stat. 1969, ch. 95½, par 7A—203.

The automobile liability policy issued by Wolverine included a "Limits of Liability" provision, challenged here by

the plaintiff as offensive to public policy, which declared that "any amount payable under the terms of this Endorsement [uninsured motorist coverage] because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by * * * (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."

The parties have invited attention to cases from other jurisdictions which have considered whether the deduction of workmen's compensation benefits from a minimum required uninsured motorists coverage is contrary to public policy. There are holdings that it offends: *Peterson* v. *State Farm Mutual Ins. Co.*, 238 Ore. 106, 393 P.2d 651; *Standard Accident Ins. Co.* v. *Gavin* (Fla. 1966), 184 So.2d 229; *Booth* v. *Seaboard Fire & Marine Ins. Co.* (D.C. Neb. 1968) 285 F. Supp. 920; other cases have viewed it as not repugnant to public policy, *e.g. Napolitano* v. *Motor Vehicle Vehicle Accident Indemnification Corp.*, 21 N.Y.2d 281, 234 N.E.2d 438; *Grunfeld* v. *Pacific Automobile Ins. Co.*, 232 Cal. App. 2d 4, 42 Cal. Reptr. 516, and *Allen* v. *United States Fidelity and Guaranty Co.* (La.), 188 So.2d 741. It must be observed that in all of the cases cited by the plaintiff, with the exception of *Booth* v. *Seaboard Fire & Marine Ins. Co.* (D.C. Neb. 1968) 285 F. Supp. 920, holding that policy provisions providing for the deduction of workmen's compensation benefits were contrary to public policy, the workmen's compensation statutes concerned did not require the employee to reimburse the employer in full for compensation benefits. The employer was not subrogated to the employee's claim against the wrongdoer to the full extent of his payment to the employee. To illustrate, in *Peterson* v. *State Farm Mutual Automobile Ins. Co.*, 238 Ore. 106, 393 P.2d 651, the Oregon statute required an injured employee to reimburse the employer only to the extent of sixty percent of benefits received. Thus, an uninsured motorists' pro-

vision calling for the deduction in full of workmen's compensation benefits would cause an employee to receive less protection under the policy than he would had the tortfeasor been insured.

In Illinois, the Workmen's Compensation Act provides in substance that an employee who has received compensation under the Act is required to reimburse the employer from any recovery the employee receives from a third party legally responsible for the employee's injuries. The obligation is to reimburse for the full amount of benefits paid or payable by the employer and a lien in favor of the employer is provided upon any recovery by the employee for the amount of the benefits. (Ill. Rev. Stat. 1969, ch. 48, par. 138.5(b).) The employee is entitled to retain only that portion of a recovery from the tortfeasor which exceeds the benefits received under the Act from the employer. (See *Continental Casualty Co. v. Sweda,* 113 Ill. App. 2d 423, 251 N.E.2d 65; *O'Brien v. Chicago City Ry. Co.,* 305 Ill. 244.) In Illinois, if the deduction challenged here is permitted, the employee's position is the same under the uninsured motorist's coverage as it would be had the tortfeasor carried the minimum insurance. Where the tortfeasor is insured, the employee reimburses his employer in full from the recovery from the tortfeasor. Where the tortfeasor is uninsured, the benefits paid by the employer are deducted from the recovery. If the benefits paid by the employer exceed the amount payable under the coverage, as here, the insurance carrier is without liability. In neither instance does the employee retain both compensation from the employer and identical damages from the tortfeasor. The deduction provision does not cause the employee with uninsured motorist's coverage to have less financial protection than he would have had if the tortfeasor had carried insurance in the minimal amount. Were we to hold it is contrary to public policy, it would mean that an injured employee's extent of recovery, under circumstances such as exist here,

would hinge on the fortuitous circumstance that the tortfeasor was uninsured and was not otherwise financially responsible. We do not consider that a policy limitation which precludes this result is offensive to public policy.

An argument of the plaintiff is that the provable damages sustained through the decedent's death far exceeded $10,000. If this were a case involving an insured tortfeasor, reimbursement of the employer would not be required, she contends, as the claim against the tortfeasor was not satisfied in full. Therefore, the protection available under the uninsured motorist coverage provides less protection than would have been afforded had the tortfeasor been insured. However, the plaintiff errs. Our workmen's compensation statute does not make the employee's obligation to reimburse his employer dependent on the employee's recovering his full measure of damages from the tortfeasor. The appellate court correctly observed: "To the extent that workmen's compensation benefits have been received, the obligation of reimbursement exists regardless of the amount recovered or the total damages sustained by the injured employee." 105 Ill. App. 2d 408, 413; also see *Continental Casualty Co.* v. *Sweda,* 113 Ill. App. 2d 423, 251 N.E. 65.

The judgment of the Appellate Court for the Third District, for the reasons given, is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CULBERTSON took no part in the consideration or decision of this case.

Mr. JUSTICE WARD, dissenting:

I would declare that the provision drawn by Wolverine to avoid or reduce its liability to policyholders is contrary to the legislative purpose and to public policy.

The opinion of the majority is founded on the mistaken conclusion, or better, I consider, the mistaken assumption that the statute requiring uninsured motorists coverage has the purpose of providing the same character

of protection, and no more, for the policyholder that he would have had if the tortfeasor had had insurance in the minimum amounts of $10,000/$20,000 required by the Financial Responsibility Law. The legislative intention was that the uninsured motorist should have protection through insurance in an amount not less than the limits prescribed for persons governed by the Financial Responsibility Law. There is nothing else in the uninsured motorist statute to suggest that the legislature intended to equate the protection to be provided and the rights of the assured with rights and limitations of rights under the Financial Responsibility Law. The assumption that the uninsured motorist's statute was intended to place a policyholder only in the position he would occupy had the tortfeasor had the minimum liability insurance required by the Financial Responsibility Law, is, apart from the question of minimal limits, basically gratuitous. The legislature knew the driving public would be paying premiums for the coverage the legislature was making mandatory. It is plainly reasonable to say the legislature anticipated that motorists thus insured might acquire benefits that would not otherwise have been available to them.

The opinion of the majority stresses the obligation of an employee in Illinois who recovers damages from a tortfeasor to reimburse his employer for compensation which has been paid to the employee under the Workmen's Compensation Act. Because of this duty the majority concludes that the policy provision here is not contrary to the legislative intendment underlying the statutory requirement of uninsured motorists coverage. It was intended, in the view of the majority, that one insured under an uninsured motorists provision might recover to the extent, and only to that extent, that he would recover had the tortfeasor had the minimum liability insurance required by the Financial Responsibility Law.

To me, this view is misguided. The basis for the ob-

ligation of an employee to reimburse his employer compensation benefits paid is to prevent an unjust enrichment, that is, to prevent the employee from retaining compensation paid by the employer and also damages from the tortfeasor. In *Reno v. Maryland Casualty Co.*, 27 Ill. 2d 245, at 248, we said: "The underlying basis of the employer's right to subrogation is the prevention of an unjust enrichment on the part of the employee in the form of a double recovery for the same injury," and in *Geneva Construction Co. v. Martin Transportation Co.*, 4 Ill. 2d 273, at 284, it was said: "If the non-negligent employer is deprived of his right of subrogation, it woud result in the unjust enrichment of the employee, who could retain both compensation and damages, thereby violating a basic tenet of the common law that there may not be a double satisfaction for the same wrong. In fact, that common-law principle has been deemed to be the basis for the enactment of the various statutory subrogation provisions."

This rationale has no pertinency here. There is no reason to prohibit a so-called double recovery when one of the recoveries by the employee, *i.e.,* the one against an insurance company, is founded in contract and has been made possible by the employee's payment of premiums. An employee's recovery against an insured motorist is founded in tort. However, his recovery in the case of an uninsured tortfeasor is based on a contract the employee has had with a third person, *i.e.,* the insurance company, which for a premium provided him with uninsured motorist's coverage. There can be no well-founded objection to a so-called double recovery under these circumstances. To deny the employee full recovery is to cause, as I see it, an unjust enrichment of the insurance company to which premiums have been paid.

The majority is concerned by the possibility that if the provision is held contrary to public policy it would mean that the injured employee's extent of recovery would

hinge on the fortuitous circumstance that the tortfeasor was uninsured. If this is really a cause for concern this concern should be dissipated by a recognition that the employee's recovery against the uninsured driver would be based on this insurance contract for which the employee would have paid a premium to cover the fortuity that he might sustain damage by the conduct of an uninsured driver. What concerns me is the implicit construction by the majority that the legislature intended to permit an insurance carrier, by restricting its liability, as here, to financially advantage itself by the fortuitous circumstance that its insured when killed or injured was within the protection of the Workmen's Compensation Act.

I would hold that the restricting provision frustrates the legislative purpose to provide insurance for those "who are legally entitled to recover damages from owners and operators of uninsured motor vehicles" and is contrary to public policy.

Mr. JUSTICE SCHAEFER joins in this dissent.